United States District Court
Southern District of Texas
**ENTERED**
June 29, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GRAND FAMOUS SHIPPING LTD., *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:18-CV-04678 |
| UNKNOWN CLAIMANTS, *et al*, | § § | |
| Defendants. | | |

## MEMORANDUM & ORDER

This limitation of liability action arises out of the allision of the M/V Yochow with the OSG 243 barge on June 13, 2018. Limitation petitioners are Grand Famous Shipping Ltd., owner of the M/V Yochow, and Beikun Shipping (Tianjin) Co., Ltd., manager of the M/V Yochow. Claimants are OSG 243 LLC, owner of the OSG 243; OSG Ship Management Inc., manager of the OSG 243; TPC Group LLC, lessee of the A-Dock; Port of Houston Authority ("POHA"), lessor of the A-Dock; and Wilbert Cormier, personal injury claimant. The Court held a hearing on all pending motions for summary judgment on June 18, 2020, and ruled from the bench. The Court provides this memorandum and order to further document its rulings and reasoning.

### I. OSG 243 LLC's and Overseas Ship Management Inc's Motion for Summary Judgment (Doc. No. 122)

Limitation Petitioners brought a counterclaim for negligence against OSG 243 LLC and Overseas Ship Management Inc. ("OSG Claimants"). OSG Claimants argued that "all claims of negligence or fault against OSG should be dismissed because the evidence in this matter demonstrates that there is no genuine issue of fact on the issue of breach of duty and causation." (Doc. No. 122, at 3). The Court agreed and granted their motion for summary judgment.

1

Limitation Petitioners' allegation of negligence against OSG Claimants centers on the claim that OSG Claimants failed to maintain adequate lighting on the OSG 243 at the time of the incident. However, OSG Claimants have produced evidence that the barge was lit and visible at the time of the incident, including deposition testimony from the M/V Yochow's Houston Pilot Captain William Ewing, an email from USCG Marine Safety Specialist Deck Officer 2 Collin Croft confirming that video evidence shows that the deck lights of the OSG 243 were illuminated prior to the incident, and the informal acknowledgement of Grand Famous Shipping Ltd.'s corporate representative that OSG Claimants did not contribute to the accident. The only counterevidence is deposition testimony from Captain Xiaofei Yang, the master of the M/V Yochow, who testified that the lighting on the OSG 243 "was too dark," and that "neither the pilot nor I saw it . . . Even after the collision, we didn't see the barge. We thought we hit the port." (Doc. No. 131, Yang Depo, Exh. 2, at 65).

When a moving vessel strikes an anchored vessel, there is a presumption of fault on the moving vessel. *The Oregon*, 158 U.S. 186 (1894); *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 726 (5th Cir. 1967). To overcome this presumption, "the moving vessel must show that it was without fault or that the collision was occasioned by fault of the stationary object or was the result of inevitable accident." *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir. 1977). If the owner of the moving vessel rebuts the presumption, then there is room for a comparative fault analysis. *See City of Chicago v. M/V Morgan*, 375 F.3d 563, 573 (7th Cir. 2004). "[U]nder the comparative fault analysis between a vessel and a stationary object, a vessel may minimize its liability by providing evidence that the stationary object contributed to the injury it incurred, however, it will be absolved of liability only if the stationary object is deemed the sole proximate cause of the injury." *Id.* (citing *Bunge Corp.*, 558 F.2d at 802).

The presumption applies here because the OSG 243 was anchored and moored at the time of the incident. To overcome that presumption at trial, Limitation Petitioners would need to show that OSG Claimants breached a relevant duty of care and that the breach caused the accident. Limitation Petitioners argued that the testimony of Captain Yang creates a fact issue regarding "whether the OSG barge has potential liability for the incident." (Doc. No. 131, at 5). OSG Claimants replied that the negligence claims against them must be dismissed because "no party had designated an expert who has attributed any fault to OSG." (Doc. No. 122, at 10–11). OSG Claimants further argued that the "unsubstantiated assertion and self-serving speculative testimony" of Captain Yang does not raise a fact issue regarding causation. (Doc. No. 132, at 1).

At the hearing, the Court sided with OSG Claimants. The Court determined that the lack of expert testimony as to the lighting issue, coupled with the presumption against Limitation Petitioners, makes it such that there is no genuine issue of material fact regarding OSG Claimants' alleged negligence. The Court also determined that Captain Yang's testimony, when contrasted with all countervailing evidence, does not raise a genuine issue of fact. *See Jones v. United States*, 936 F.3d 318, 321–22 (5th Cir. 2019) ("When deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.") (internal quotation marks and citation omitted). Accordingly, the Court granted OSG Claimants' motion for summary judgment on all claims of negligence or fault against them.

## II. Limitation Petitioners' Partial Motion for Summary Judgment on the Issue of Unseaworthiness (Doc. No. 134)

The first step in determining whether a ship owner is entitled to limitation of liability involves determining whether acts of negligence or conditions of unseaworthiness caused the

accident. *See Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976). Claimants have alleged that both acts of negligence by the M/V Yochow crew, and conditions of unseaworthiness on the M/V Yochow caused the incident. Limitation Petitioners requested summary judgment on the issue of unseaworthiness as a matter of law. They argued that unseaworthiness has no place in this case because, in admiralty law, the "warranty of seaworthiness" applies only to seamen/crew members.

Limitation Petitioners cited to a case from the District of Oregon, in which the district court, invoking the narrowness of the warranty of seaworthiness, held that a showing of negligence was the only route available for non-seamen claimants seeking to overcome limitation of liability:

> [N]one of the claimants in this action is a cargo owner or seaman. The claimants are parties, public and private, seeking redress for damage to shorelines, natural resources and personal property. The warranty of seaworthiness does not extend to such parties. The warranty only applies to the crew of the vessel and the cargo. . . . To prevail, claimants must prove negligent acts caused the casualty and that those acts were within the privity and knowledge of SBOT.

*In re Sause Bros. Ocean Towing*, 769 F. Supp. 1147, 1151 (D. Or. 1991). Limitation Petitioners also identified a handful of other cases in which district courts applied similar reasoning.

The Court is unpersuaded by Limitation Petitioners' argument. As a preliminary matter, the Court finds it debatable whether law interpreting the "warranty of seaworthiness" applies to limitation of liability cases. The "warranty of seaworthiness" refers to a "strict liability" obligation that the shipowner has to provide his seamen with a safe ship. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 25 (1990). Under this warranty, a shipowner is liable for personal injuries to his crew members when those injuries are caused by the ship being unsafe, "irrespective of fault and irrespective of the intervening negligence of crew members." *Id.* In the limitation of liability context, however, strict liability is not at play, and courts generally speak about "conditions of unseaworthiness," rather than a "warranty of seaworthiness." *See, e.g., Farrell Lines Inc.*, 530 F.2d

4

at 10 ("First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident."). Given these differences, it is unclear whether the set of individuals who may argue for conditions of unseaworthiness in the limitation of liability context is restricted to the narrow set of individuals who may invoke the warranty of seaworthiness in the personal injury context. For guidance, the Court turned to Fifth Circuit law on conditions of unseaworthiness.

Although the Fifth Circuit has not engaged directly with the issue just discussed, it has, on multiple occasions, analyzed evidence of unseaworthiness proffered by non-seamen limitation claimants similarly situated to the claimants in this case. One example is *Trico Marine Assets Inc. v. Diamond B Marine Services Inc.*, 332 F.3d 779 (5th Cir. 2003). In *Trico*, the claimants were not seamen. Nonetheless, the Fifth Circuit affirmed the district court's decision denying limitation based, in part, on unseaworthiness. The Fifth Circuit concluded: "the facts found in this case go far beyond mere navigational errors. [Limitation petitioner] knew, or should have known that the [vessel] *was unseaworthy* and that its captain was improperly trained." *Id.* at 790 (emphasis added). Another example is *Farrell Lines Inc. v. Jones*, 530 F.2d 7 (5th Cir. 1976). In that case, the Fifth Circuit reversed the district court's denial of limitation, but only because it held the district court clearly erred in finding that the vessel was unseaworthy or the owner negligent. The Fifth Circuit never indicated it thought claimants, as non-seamen, lacked standing to argue for unseaworthiness. In fact, the Fifth Circuit noted that "the determination of negligence overlaps the determination of unseaworthiness. Seaworthiness is defined as reasonable fitness to perform or do the work at hand. . . . The standard of reasonableness thus pervades both determinations." *Id.* at 10 n.2. In light of this case law, the Court determined that Limitation Petitioners were not entitled to summary judgment as a matter of law on claimants' allegations of unseaworthiness.

**III.   Limitation Petitioners' No Evidence Motion for Partial Summary Judgment (Doc. No. 135)**

Limitation Petitioners argued that "TPC, POHA and Mr. Cormier have no evidence to support their respective claims that the Limitation Petitioners conduct rises to the level of gross negligence or recklessness, was willful or wanton, or that the acts were performed with callous or reckless disregard to the rights of others." (Doc. No. 135, at 4). "Gross negligence is distinguished from ordinary negligence in that it encompasses harm that is willfully inflicted or is caused by the wanton or reckless disregard for the safety of others." *In re Marquette Transp. Co. Gulf-Inland*, LLC, No. CV 13-5114, 2016 WL 1587382, at *4 (E.D. La. April 20, 2016). A determination of whether a defendant's conduct constitutes gross as opposed to ordinary negligence "depends on the particular circumstances of each case." *Todd Shipyards Corp. V. Turbine Serv. Inc.,* 674 F.2d 401, 411 (1982). Individual pieces of evidence might not alone establish gross negligence, but the evidence may cumulatively show reckless conduct. Because the Court determined that it would be necessary to hear claimants' evidence in context to reach a determination as to the issue of gross negligence, the Court denied Limitation Petitioners' motion for summary judgment on the issue.

**IV.   Limitation Petitioners' Partial Motion for Summary Judgment on POHA's Breach of Tariff Contract Claim (Doc. Nos. 136, 137) and POHA's Cross Motion for Partial Summary Judgment (Docs. 146).**

In addition to claims of negligence, POHA has brought a claim for breach of contract against Limitation Petitioners. (Doc. No. 21, at 8). The alleged contract is POHA Tariff No. 8 ("the tariff"), which specifically provides for recovery of damage to POHA's property as well as reasonable attorneys' fees. Limitation Petitioners moved for summary judgment on POHA's breach of contract claim, arguing that, as a matter of law, they are not bound by the tariff. POHA filed a cross motion for summary judgment.

For the voyage in question, China Navigation Pte. Ltd., the time charterer of the M/V Yochow, sub-chartered the vessel to Daiichi Chuo Logistics Co. Ltd. ("Daiichi"). Daiichi hired a ship's agent, General Steamship Corp., to handle Daiichi's affairs while the M/V Yochow was in Houston. In advance of the M/V Yochow's arrival in Houston, General Steamship Corp. signed a berth application to the POHA that included the terms and conditions of the tariff.

Limitation Petitioners argued that "because General Steamship did not have actual or apparent authority to act on behalf of the Limitation Petitioners or the M/V YOCHOW to sign the berth application, Limitation Petitioners are not subject to or bound by the terms and conditions of Sub-Rule No. 59 of the POHA Tariff No. 8." (Doc. No. 136, at 4–5). POHA conceded this point in response: "POHA has no factual evidence at this point that would establish that the purported agent of the Vessel, General Steamship, had authority to bind the Vessel or its owner to any type of contractual obligation. Accordingly, there is no express private contract between POHA and Petitioners[.]" (Doc. No. 145, at 12).

Nonetheless, POHA argued that the tariff is enforceable against Limitation Petitioners as an implied contract pursuant to the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, 46 U.S.C. § 40101 *et seq.*, which provides in relevant part:

> (f) Marine terminal operator schedules. A marine terminal operator may make available to the public a schedule of rates, regulations, and practices, including limitations of liability for cargo loss or damage, pertaining to receiving, delivering, handling, or storing property at its marine terminal. Any such schedule made available to the public *is enforceable by an appropriate court as an implied contract* without proof of actual knowledge of its provisions.

46 U.S.C. § 40501(f) (emphasis added). The corresponding federal regulation defines "practices" to mean "those usages, customs or modes of operation which in any way affect, determine or change the rates, charges or services provided by a marine terminal operator." 46 C.F.R. 525.1.

7

The Court has determined that the tariff at issue here qualifies as a "practice" under this definition. *See Ondimar Transportes Maritimos v. Beatty Street Properties, Inc.*, 555 F.3d 184, 185 (5th Cir. 2009) (holding that a similar tariff was enforceable against the owner and operator of a vessel as an implied contract pursuant to § 40501(f)). Moreover, is undisputed that POHA qualifies as a marine terminal operator and that POHA made its schedule publicly available. All of these points support POHA's argument for an implied contract.

However, the regulations also state:

> (2) Enforcement of terminal schedules. Any schedule that is made available to the public by the marine terminal operator shall be enforceable by an appropriate court as an implied contract between the marine terminal operator and *the party receiving the services rendered by the marine terminal operator*, without proof that such party has actual knowledge of the provisions of the applicable terminal schedule.

46 CFR 525.2 (emphasis added). Limitation Petitioners argued that the tariff cannot be enforced against them as an implied contract because they were not, during the voyage in question, "the party receiving the services rendered by the marine terminal operator." *Id.* As far as this Court is aware, no other court has before interpreted this particular phrase.

In support of their interpretation, Limitation Petitioners first argued that "the party" must refer to an individual or entity, rather than a vessel. They reasoned that, because 46 CFR 525.2 "abolishes the actual knowledge requirement previously applied to the party receiving services, such a party must be an individual or an entity and may never be a vessel, because a vessel cannot possess 'actual knowledge' to begin with." (Doc. No. 153, at 5). Limitation Petitioners further argued that, "at the time of the incident, and when the damages alleged by POHA occurred, the only entity that was receiving services from the POHA was Daiichi, the entity for whom General Steamship was acting, and for whom General Steamship provided the berth application." *Id.*

8

In response, POHA argued that § 40501(f) was intended to make it easier for ports to hold to account parties that do serious damage to their facilities, and that the phrase "party receiving the services" should therefore be interpreted broadly to extent to vessel owners, and not just their charterers at any given point in time. Specifically, POHA argued:

> Vessel owners can protect themselves by selecting to whom they may charter their vessels and by including risk allocation provisions among the terms of their charter parties, including reference to any subcharterers and/or the nomination of agents. POHA does not choose these agents or charterers, and the only means to protect itself from the potentially significant costs of damage to its facilities that these parties can cause is by ultimately holding vessels and their owners responsible. POHA's Tariff No. 8 was published and made applicable to all users of its facilities equally for this precise purpose

(Doc. No. 160, at 6). The Court is sympathetic to these concerns, but finds that the plain language of the regulation pushes in the other direction. Although the issue presents a close call, the Court has concluded that Limitations Petitioners' interpretation of the phrase "the party receiving the services rendered by the marine terminal operator," 46 CFR 525.2, is the correct one. As a marine terminal operator, the services POHA was providing were, by definition, "furnishing wharfage, dock, warehouse or other terminal facilities." 46 CFR 525.1(13). The charterers of the M/V Yochow, rather than Limitation Petitioners, were the ones receiving those services during the voyage in question. Once 46 CFR 525.2 is so interpreted, the tariff may not be enforced as an implied contract against Limitation Petitioners. The Court thus granted Limitation Petitioners' motion for summary judgment on POHA's breach of contract claim, and denied POHA's corresponding cross motion for summary judgment.

V. Conclusion

For the reason described above and as stated on the record at the June 18, 2020 hearing, the Court has decided to **GRANT** OSG 243 LLC's and Overseas Ship Management Inc's Motion

for Summary Judgment (Doc. No. 122); **DENY** Limitation Petitioners' Partial Motion for Summary Judgment on the Issue of Unseaworthiness (Doc. No. 134); **DENY** Limitation Petitioners' No Evidence Motion for Partial Summary Judgment (Doc. No. 135); **GRANT** Limitation Petitioners' Partial Motion for Summary Judgment on POHA's Breach of Tariff Contract Claim (Doc. Nos. 136, 137); and **DENY** POHA's Cross Motion for Partial Summary Judgment (Doc. No. 146).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 29th day of June, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE