UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GRAND FAMOUS SHIPPING LTD., *et al.*, | § § § § |
| Plaintiffs, | § § |
| VS. | §  CIVIL ACTION NO. 4:18-CV-04678 |
| THE PORT OF HOUSTON AUTHORITY, *et al.*, | § § § § |
| Claimants. | § § |

## **MEMORANDUM & ORDER**

This limitation of liability action arises out of the allision of the M/V Yochow with the OSG 243 barge and A-Dock at the TPC Terminal on June 13, 2018. Limitation Petitioners are Grand Famous Shipping Ltd., owner of the M/V Yochow, and Beikun Shipping (Tianjin) Co., Ltd., manager of the M/V Yochow. Claimants are OSG 243 LLC, owner of the OSG 243; OSG Ship Management Inc., manager of the OSG 243; TPC Group LLC, lessee of the A-Dock; Port of Houston Authority ("POHA"), lessor of A-Dock and the TPC Terminal; and Wilbert Cormier, personal injury claimant.

The Court heard two motions on November 15, 2021. First, the Court heard OSG 243 LLC and Overseas Ship Management, Inc.'s (together "OSG's") Motion for Summary Judgment on POHA's Claims. (Doc. 212.) Second, the Court heard the Limitation Petitioners' Partial Joinder in OSG's Motion for Summary Judgment and Motion to Reconsider the Court's Prior Ruling on POHA's Contract Claims. (Doc. 214.) At the hearing, the Court ruled from the bench. The Court provides this Memorandum and Order to further document its rulings and reasoning.

1

## I. OSG'S MOTION

### A. *Standard of Review*

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.' " *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

"[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19. "When deciding a motion for summary judgment prior to a bench trial," the district court has limited additional "discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Jones v. United States*, 936 F.3d 318, 321–22 (5th Cir. 2019).

*B. Analysis*

OSG seeks summary judgment on POHA's contract claims on two grounds. First, OSG argues that it was not subject to Tariff No. 8 at the time of the allision because Subrule 047 restricts the reach of the Tariff to facilities that POHA owned and operated. Second, OSG contends that, even if it was subject to Tariff No. 8, it cannot be held liable under the Tariff because none of the Subrules apply to its role in the allision. The Court grants OSG's Motion for Summary Judgment on OSG's second contention: namely, assuming *arguendo* that Tariff No. 8 applies, neither Subrule 059 nor Subrule 052(5)(a) renders OSG liable to POHA.

1. <u>Subrule 059</u>

Subrule 059 provides in pertinent part:

> When damage is caused to any of the property or any of the facilities of the Port Authority, the Users causing such damage (including, without limitation, said Users' agents, servants, representatives, and employees as defined in Subrule No. 029 hereof) shall be jointly and severally responsible for the cost of repairs, and they shall be billed thereto, and all shall be jointly and severally responsible for payment thereof.

(Doc. 217-5 at 33.) OSG argues that it is not liable for damages under Subrule 059 because it was not a "User[] causing such damage" to A-Dock. (Doc. 212 at 7.) The Barge was moored at A-Dock at the time of the allision. (*Id.*) When the Yochow allided with the Barge, that impact pushed the Barge into A-Dock and damaged the TPC Terminal. (*Id.*) Captain Ewing testified that to his knowledge, the Barge did not do anything to contribute to the incident. (Doc. 223 at 8.) Captain Ewing also stated that "all things staying the same," the Yochow likely would have plowed directly into the dock instead of into the Barge had the Barge not been present. (*Id.*) And POHA, for its part, presents no evidence to indicate that the Barge served as anything other than a big metal bumper between the Yochow and A-Dock. Consequently, OSG argues that it did not "cause" any

3

damage to A-Dock within the meaning of Subrule 059. In response, POHA contends that Subrule 059 only requires "but-for causation." (Doc. 217 at 13.) Rather than looking to traditional concepts of proximate cause, POHA asserts that the Court should ask "whether an effect would have occurred in the absence of [a] particular factor or event[.]" *Easom v. US Well Servs., Inc.*, 527 F. Supp. 3d 898, 913 (S.D. Tex. 2021). POHA then states that there is a genuine dispute of material fact as to whether the TPC Terminal would have been damaged but-for OSG's decision to moor at A-Dock.

POHA's argument for but-for causation fails. If Subrule 059 only required but-for causation, there would be no limit to OSG's potential liability. A hypothetical scenario draws this conclusion into sharper relief. If OSG's decision to moor at A-Dock required a TPC employee to fill out additional paperwork, and that employee hated paperwork so much that he decided to burn down A-Dock, OSG's decision to moor at the TPC Terminal would be a but-for cause of any resulting damage to A-Dock. In that scenario, however, no court sitting in equity would hold OSG liable under Tariff No. 8 as a "User[] causing such damage" to A-Dock. Plainly, there must be some limit on what constitutes a "User[] causing such damage" that stops short of but-for causation. But-for causation is therefore not the proper standard for liability under Subrule 059.

To wit, POHA itself does not adhere to the standard of but-for causation in its Response. Instead, POHA also states that "cause has to be read in the context of contract law, where causation will be established where the damages for which relief is claimed were a natural, probable and foreseeable consequence of the defendant's actions." (Doc. 217 at 13.) That standard, traceable back to *Hadley v. Baxendale*, 9 Exch. 341, 354 (1854), requires something more akin to proximate cause. And applying that standard, OSG did not "cause" the damage to A-Dock. POHA bears the burden of proof on this issue at trial, and yet the only support for POHA's position is its statement

4

that: "but for the mooring of OSG's barge at Dock-A, it cannot be said that Doc-A necessarily would have suffered physical damage due to the apparent errors and/or omissions by the Limitation Petitioners, and it certainly cannot be determined on summary judgment that Dock-A would have suffered the same scope of physical damage had OSG's barge not been moored there." (Doc. 217 at 17.) This conclusory statement contains no evidence to indicate that OSG's actions naturally, probably, and foreseeably damaged A-Dock. Without countervailing evidence, it beggars belief that OSG's decision to moor at A-Dock naturally, probably, and foreseeably caused the Barge to be struck by the Yochow and, in turn, to strike A-Dock. Because the damages to A-Dock were not the natural, probable, and foreseeable consequence of OSG's decision to moor, OSG is not a "User[] causing such damage" to A-Dock within the meaning of Subrule 059. Subrule 059 therefore cannot provide the basis for contractual liability for OSG.

2. Subrule 052(5)(a)

POHA also asserts in its Response—and for the first time in this litigation—that OSG might alternatively be liable under Subrule 052(5)(a).[1] Subrule 052(5)(a) states:

> With respect to damages or injury to berths, wharves, transit sheds, mechanical equipment, or other assigned facilities, occurring during the tenancy, occupation, and/or use thereof by any User(s) to whom such facilities were (temporarily or permanently) assigned, such User(s) shall be responsible and liable to the Port Authority for all such damages or injury, without regard to who shall have caused the damage or injury, except for damage or injury caused by the negligence of the Port Authority, for which the Port Authority shall not be relieved.

---

[1] POHA's reliance on Subrule 052(5)(a) comes as such a surprise to OSG that OSG complains that the POHA failed to properly plead this claim. (Doc. 223 at 3–4.) OSG notes that POHA's First Amended Verified Complaint in Intervention referred to Subrule 059 but made no mention of Subrule 052(5)(a). (Doc 212-1 at 7–9.) Still, POHA generally alleged that OSG failed to reimburse it for losses as required under Tariff No. 8. (*Id.* at 8.) Generously reading POHA's complaint to encompass the entirety of Tariff No. 8, POHA's argument regarding Subrule 052(5)(a) does not require leave to amend the original pleadings.

5

(Doc. 217-5 at 25.) At first glance, Subrule 052(5)(a) creates "an extraordinary risk shifting provision making OSG strictly liable for the unexpected and unprovoked acts of third parties." (Doc. 223 at 6.) Indeed, the provision shifts even more risk than a traditional strict liability clause. A traditional strict liability clause does not require that the injured party prove fault, but it does require that the injured party prove causation. *See e.g.*, *Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 256–57 (5th Cir. 1988) (stating that, at least in tort, "[u]nder both negligence and strict liability theories the plaintiff must, of course, prove causation"); *see Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 712 (1995) ("Strict liability means liability without regard to fault; it does not normally mean liability for every consequence, however remote, of one's conduct.") (O'Connor, J., concurring). According to POHA, however, Subrule 052(5)(a) requires neither fault nor causation.

Despite the ostensibly broad reach of Subrule 052(5)(a), however, it should not apply to OSG. Tariff interpretation follows the general rules of contract interpretation. *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, 132 F. Supp. 3d 876, 884 (S.D. Tex. 2015) (citing *Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986)). " 'Applying federal law in the contract context includes looking to 'principles of general contract law' that can be found in treatises or restatements of the law.' " *Id.* (citing *International Marine, L.L.C. v. FDT, L.L.C.*, 619 Fed. Appx. 342, 348 2015 WL 4720257, at *5 (5th Cir. Aug. 10, 2015)). In case after case, courts have recognized that contractual language is ambiguous where one provision reasonably and directly conflicts with another provision. *See e.g.*, *Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 366 (5th Cir. 2012). And where contract language is ambiguous, the "traditional rule of construction, applied in admiralty cases, is to construe 'contract language . . . most strongly against its drafter.' " *Navieros Oceanikos, S. A., Liberian Vessel Trade Daring v. S.*

*T. Mobil Trader*, 554 F.2d 43, 47 (2d Cir. 1977) (quoting *American Export Isbrandtsen Lines, Inc. v. United States*, 390 F. Supp. 63, 66 (S.D.N.Y. 1975)).

Here, Subrule 052(5)(a) conflicts with Subrule 059. Subrule 059 limits liability for damage to POHA property, facilities, or equipment to "Users causing such damage." That provision inherently restricts the universe of liable users to those who cause damage. Subrule 052(5)(a), by contrast, extends liability to all users of assigned facilities, notwithstanding whether they caused the damage. Because Subrule 052(5)(a) expands the pool of liable users beyond the limits of Subrule 059, the two provisions reasonably conflict with each other. This inconsistency, in turn, renders Tariff No. 8's indemnification provisions ambiguous and requires the Court to apply the traditional anti-drafter rule. Given that POHA penned Tariff No. 8, the anti-drafter rule suggests that the Court should read Subrule 052(5)(a) as to not apply to users who fall outside the boundaries of Subrule 059.

The context of Subrule 052(5)(a) further compels this narrow reading. Subrule 052(5)(a) is, at its core, an indemnity clause. "A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). Furthermore, "[a] maritime contract containing an indemnity agreement . . . should be read as a whole[.]" *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984). Subrule 059 is the only provision under the heading "Responsibility for Property Damage." (Doc. 217-5 at 33). That heading plainly applies to the dispute here. Subrule 052(5)(a), meanwhile, falls under the heading: "Liability of Port Authority," along with five other subsections

7

that expressly concern POHA's own liability for damages (*Id.* at 24.) The context of Subrule 052(5)(a), then, suggests that it is more concerned with indemnifying POHA against third party claims than with giving POHA the authority to hold a user responsible for damage to POHA property. What's more, POHA's decision to bury Subrule 052(5)(a) outside of the "Responsibility for Property Damage" section implies that the parties did not intend to treat it as an extraordinarily broad indemnity clause. The context of Subrule 052(5)(a), then, also militates in favor of a narrow reading of the provision.

Finally, Subrule 052(5)(a) is limited to "User(s) to whom such facilities were (temporarily or permanently) assigned[.]" (Doc. 217-5 at 25.) OSG notes that POHA provides no evidence to indicate that the Barge was assigned to A-Dock. Following the no-evidence showing provided by OSG, it is POHA's burden to demonstrate that the Barge was temporarily or permanently assigned to the TPC Terminal. *See Celotex Corp.*, 477 U.S. at 322 (noting that judgment is mandated if against a party that "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial"). But POHA musters no evidence to indicate that any such assignment took place. POHA provides a declaration regarding the application of Subrule 059, but nothing going to the distinct requirements of Subrule 052(5)(a). (Doc. 217-2.) And the simple fact that the Barge was moored at A-Dock does not necessarily mean that it was officially assigned to the TPC Terminal. At this stage, POHA's failure to demonstrate that OSG was assigned to the TPC Terminal represents yet another flaw in its argument for the application of Subrule 052(5)(a).

Overall, then, neither Subrule 059 nor Subrule 052(5)(a) supports POHA's claim for contract damages against OSG. Because POHA submits no other provisions that could beget contractual liability for OSG, the Court **GRANTS** OSG's Motion for Summary Judgment.

## II. THE LIMITATION PETITIONERS' MOTION

One week after OSG filed its Motion for Summary Judgment, the Limitation Petitioners filed their "Partial Joinder" in OSG's Motion and a Motion to Reconsider the Court's Prior Ruling on the POHA's Contract Claims. (Doc. 214.)

### A. Standard of Review

The proper standard of review for the Limitation Petitioners' Motion depends on whether it constitutes a new summary judgment motion or a motion for reconsideration. The Motion raises two arguments. First, the Limitation Petitioners contend that POHA has no contract claim under Tariff No. 8 because it has no jurisdiction over A-Dock pursuant to Subrule 047. (Doc. 214 at 8.) Second, the Limitation Petitioners argue that POHA cannot recover any damages under Subrule 059 because it did not produce any of the required invoices. (*Id.*) Each argument requires a different standard of review.

The core of the Limitation Petitioners' first contention is that Tariff No. 8 is not enforceable as an implied contract against them because they are not "Users" who damaged POHA "facilities" under Subrule 059. The Court, however, has previously ruled that Tariff No. 8 is enforceable against the Limitation Petitioners as an implied contract. (Doc. 183 at 33–37.) The Limitation Petitioners' jurisdictional argument, then, essentially asks the Court to overrule its previous determination that Tariff No. 8 applies to POHA's claims as an implied contract. Because the Court did not issue a final judgment when granting POHA's original Motion on this issue, this aspect of the Motion concerns an interlocutory ruling and arises under Rule 54. *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474–75 (M.D. La. 2002). The Limitation Petitioners concede as much, presenting the Rule 54 standard in their Reply and styling their Motion as one for reconsideration. (*See e.g.*, Doc. 229 at 3 ("Limitation Petitioners have

moved for reconsideration of an interlocutory order, so the motion is controlled by Rule 54(b)[.]").)

"Under Federal Rule of Civil Procedure 54(b), a court may reconsider any order not certified for appeal when the order in question did not resolve all the claims of all the parties in the action." *Wells' Dairy, Inc. v. Travelers Indem. Co. of Illinois*, 336 F. Supp. 2d 906, 908 (N.D. Iowa 2004); *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 563 (E.D. La. 2013). "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted). Nevertheless, motions for reconsideration under Rule 54, like those under Rule 59, "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l. Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). "[T]his broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *S. Snow*, 921 F. Supp. 2d at 564–65. As a result, "[a] motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." *LeClerc v. Webb*, 419 F.3d 405, 412 n. 13 (5th Cir. 2005); *see Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994) (noting that reconsideration is not "the proper vehicle for rehashing old arguments or advancing legal theories that could have been presented earlier."). "The discretion to modify an interlocutory order does not eliminate 'the policy reasons behind discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time.' " *Caramba, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2021 WL 259388, at *2 (S.D. Tex. Jan. 26, 2021) (quoting *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, 2017 WL 3484507, *2 (S.D. Tex. Aug. 14, 2017)).

Classic reasons for granting reconsideration include: "(1) the judgment is based upon a

10

manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) manifest injustice would otherwise result; (4) there has been serious misconduct by counsel; and (5) an intervening change in controlling law alters the appropriate outcome." *Livingston Downs Racing*, 259 F. Supp. 2d at 475–76. "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.' " *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted); *see Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (defining "manifest error" on appellate review as "one that is plain and indisputable, and that amounts to a complete disregard of the controlling law" (internal citations omitted)). There is no time limit on reconsideration under Rule 54, but "[s]tability becomes increasingly important as the proceeding nears final disposition, supporting refusal to reopen issues that could cause further delay or confusion." 18B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (2d ed.) (internal citations omitted). Thus, when deciding a motion for reconsideration, "[t]he Court must strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

The Limitation Petitioners' second argument, meanwhile, concerns POHA's discharge of its obligations under Tariff No. 8. Because this argument does not require the Court to review its prior determination applying Tariff No. 8 to the Limitation Petitioners, it is properly treated as a new motion for summary judgment under Rule 56. The standard for summary judgment under Rule 56 is stated above in Part I-A.

### B. Motion for Reconsideration

The Limitation Petitioners state that the Court should grant their Motion for Reconsideration "because [they] have presented substantial reasons for reconsideration not

11

previously argued[.]" (Doc. 229 at 3.) But "[a] motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." *LeClerc v. Webb*, 419 F.3d 405, 412 n. 13 (5th Cir. 2005). The Limitation Petitioners had the necessary documents to make the argument about Subrule 047 when they originally moved for summary judgment in April 2020 *and* when they responded to the POHA's Motion for Reconsideration in September of 2020. But they did not do so. Now, despite two previous opportunities to come up with this argument, the Limitation Petitioners request a third bite at the apple. That request, however, is out of step with the purpose of reconsideration, which is not designed for parties to present new arguments. Reconsideration, after all, is not "the proper vehicle for rehashing old arguments or advancing legal theories that could have been presented earlier." *Resolution Trust Corp.*, 846 F. Supp. at 1316. The Limitation Petitioners' concession regarding the new arguments in their Motion for Reconsideration thus proves fatal.

In addition, the posture of the Limitation Petitioners' Motion implies that the Court's previous judgment was not based on a manifest error of law or fact. The timing of this filing suggests that the Limitation Petitioners read OSG's Motion and regretted not making the argument about Subrule 047. But at best, OSG's jurisdictional argument presents a close question that requires a difficult application of implied contract principles. It is hard to see how such a complicated argument—one that evaded the Limitation Petitioners' detection for over a year, no less—could be necessary to correct "a complete disregard of the controlling law." *See Guy*, 394 F.3d at 325 (citing *Venegas–Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). If the Court's error were truly manifest, the Limitation Petitioners would not have needed to wait until another party presented this purportedly curative argument one year later.

In addition, the Limitation Petitioners predicate much of their argument for reconsideration

on the fact that it would be inequitable for the Court to credit the jurisdictional argument as to OSG but not as to them. But the Court has not granted summary judgment to OSG on the jurisdictional argument. Rather, the Court has granted summary judgment to OSG on the grounds that neither Subrule 059 nor 052(5)(a) cover OSG's role in the allision. Consequently, there is no discrepancy between granting OSG's Motion and denying the Limitation Petitioners' Motion for Reconsideration.

Finally, even if the Court were to reach the merits of the Limitation Petitioners' argument, at best it presents a close question. The Limitation Petitioners chiefly argue that POHA has no contract claim because it has no jurisdiction over A-Dock. Subrule 047, entitled "Jurisdiction," states that POHA:

> has jurisdiction over and control of the use of the Houston Ship Channel from its beginning in Galveston Bay to the Turning Basin, at Houston, Texas, and all navigable streams tributary thereto in Harris County, Texas, hereinafter called waterways; and jurisdiction over and control of the use of all wharves, sheds, warehouses, grain elevators, freight handling machinery and equipment, and all other property, equipment, and facilities owned and operated by it, hereinafter called facilities, and has the power to regulate and fix charges for the use of such waterways and facilities.

(Doc. 217-5 at 15.) POHA admits in its First Amended Verified Complaint in Intervention that "TPC is the exclusive lessee and operator of the 'A-Dock[.]' " (Doc. 77-1 at 3.) Subrule 047, however, only provides that POHA has the power to fix charges for the use of "property, equipment, and facilities owned and operated by it." (Doc. 212 at 6–7 (emphasis added).) To the Limitation Petitioners, Subrule 047 means that POHA does not have the jurisdiction to collect for damages to the TPC Terminal under Subrule 059 because POHA does not operate A-Dock.

POHA correctly notes, however, that Subrule 059 states that it can hold users responsible for damage "caused to any of the property or any of the facilities of the Port Authority." (Doc.

13

217-5 at 33.) If the phrase, "any of the property" in Subrule 059 is to have independent meaning and not represent pure surplusage, it must encompass more than just the facilities that POHA owns and operates. And it makes sense to view the TPC Terminal, which POHA continued to own while leasing operative capacity to TPC, as POHA property. Consequently, it is sufficiently reasonable to read Subrule 059 as surviving Subrule 047 such that holding the Limitation Petitioners liable under Tariff No. 8 does not represent a manifest error of law or fact.

Furthermore, the Limitation Petitioners' reading of Subrule 047 would render Subrule 048 inoperative. Subrule 048 provides, in essence, that private terminals can adopt Tariff No. 8. (Doc. 217-5 at 15.) The Limitation Petitioners, however, argue that Tariff No. 8 can only apply to facilities that POHA owns and operates. If that were the case, no private terminal could ever adopt the Tariff under Subrule 048. In that scenario, Subrule 048 would be a dead letter. The conflict that the Limitation Petitioners' interpretation would create between Subrules 047 and 048 thus weighs still further against their interpretation.

Writ large, then, even if the Court were to reach the merits of the Limitation Petitioners' argument, their interpretation of Tariff No. 8 is insufficiently persuasive to qualify for reconsideration under the standard presented by Rule 54(b). Consequently, the Court **DENIES** the Limitation Petitioners' Motion for Reconsideration.

C. *Motion for Summary Judgment*

The Limitation Petitioners also contend that the Court should them grant summary judgment on POHA's contract claims because POHA "has not produced in discovery any of the types of invoices referenced" in Subrule 059. (Doc. 214 at 8.) Subrule 059 states that "the Users causing such damage . . . shall be held jointly and severally responsible for the cost of repairs, and they shall be billed thereto, and all shall be jointly and severally responsible for payment thereof."

(Doc. 217-5 at 33.) The Limitation Petitioners therefore argue that the production and "nonpayment of these invoices is a prerequisite to any recovery by the POHA." (Doc. 214 at 8.) So the Limitation Petitioners' argument goes, because POHA has not provided the requisite invoices, POHA's contract claim must fail.

POHA, for its part, contended at the hearing that its damages are presently incalculable because the damages depend on the scope and length of the process necessary to replace the TPC Terminal. POHA further argued at the hearing that Subrule 059 has no explicit time limit, so POHA still has time to bill and invoice the Limitation Petitioners within the meaning of the Subrule. At this stage of the litigation, the Court credits POHA's position that Subrule 059 has no inherent time limit. Nevertheless, the Court recognizes that Subrule 059 predicates certain aspects of POHA's recovery on the nonpayment of invoices. Consequently, while the Court **DENIES** the Limitation Petitioners' Motion for Summary Judgment at this time, it acknowledges that POHA must prove nonpayment to recover under Subrule 059 at the bench trial.[2]

D. *Clarifying the Scope of the Court's Prior Ruling*

At the hearing on this Motion, the parties made several references to the Court's prior ruling on POHA's Motion for Reconsideration (Doc. 163) and Motion for Summary Judgment (Doc. 146). Because the Court granted those Motions on the record without a memorializing order, the Court also takes this opportunity to clarify the scope of that ruling. In its original Motion for

---

[2] The Limitation Petitioners' Reply also raises new arguments regarding the conflict between Subrule 047 and 048 and whether the 20% override and attorneys' fee provisions of Subrule 059 qualify as "rates, regulations and practices" under 46 U.S.C. § 40501(f). It is well settled, however, that "[a]rguments raised for the first time in a reply brief are waived." *Houser v. LTD Fin. Servs. LP*, 512 F. Supp. 3d 746, 751 (S.D. Tex. 2021); *see United States v. Jackson*, 426 F.3d 301, 304 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief, even by pro se litigants such as Jackson, are waived."). As a result, the Court does not consider the new arguments raised in the Limitation Petitioners' Reply herein.

Summary Judgment, POHA requested that the Court hold "that POHA Tariff No. 8 is enforceable against [the Limitation Petitioners] as an implied contract." (Doc. 146 at 17.) Similarly, POHA's Motion for Reconsideration sought "a determination that POHA's Tariff No. 8 applies to its claims against Petitioners as an implied contract." (Doc. 163 at 18.) In granting POHA's Motions, then, the Court held only that the Limitation Petitioners were governed by Tariff No. 8 as an implied contract. The Limitation Petitioners therefore remain free to raise arguments not covered by that ruling regarding POHA's contract claims at the bench trial.

### III. CONCLUSION

For the reasons described above and on the record at the November 15, 2021 hearing, the Court **GRANTS** OSG's Motion for Summary Judgment on POHA's Claims (Doc. 212), and **DENIES** the Limitation Petitioners' Partial Joinder in OSG's Motion for Summary Judgment and Motion to Reconsider the Court's Prior Ruling on POHA's Contract Claims (Doc. 214).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 16th day of November, 2021.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE